**In re John Henry CHESTNUT, Jeannette Lee Chestnut, Debtors.**

**Bankruptcy No. 97–43318–7.**

United States Bankruptcy Court, D. Kansas.

July 9, 1998.

Joseph I. Wittman, Topeka, Kansas, trustee.

Gary H. Hanson, Stumbo, Hanson & Hendricks LLP, Topeka, Kansas, for Farmers and Merchants State Bank of Wakefield, Kansas.

### ORDER DENYING TRUSTEE'S MOTION FOR ADMINISTRATIVE EXPENSE

JAMES A. PUSATERI, Chief Judge.

This matter is before the Court on the case trustee's "Motion for Allowance and Payment of Administrative Expense," and an objection to the motion filed by a creditor, the Farmers and Merchants State Bank of Wakefield, Kansas ("the Bank"). Trustee Joseph I. Wittman represents himself. The Bank is represented by Gary H. Hanson of Stumbo, Hanson & Hendricks, LLP, of Topeka, Kansas. The Court has reviewed the relevant pleadings and heard argument, and is now ready to rule.

The facts are not in dispute. Before filing for bankruptcy, the debtors ran a farm. They had delivered certain livestock to a livestock commission company for sale on December 1, 1997. The Bank claimed to have perfected security interests in this and other personal property the debtors owned and to have valid mortgages on certain real property they owned. On December 1, the debtors filed a chapter 7 bankruptcy petition. With the agreement of the debtors and Mr. Wittman, then the interim trustee for the case, the Bank obtained an order allowing the sale to occur, with the proceeds to be delivered to the trustee. In seeking this relief, the Bank indicated that the debtors had already delivered the livestock to the commission company and that proceeding with the sale would eliminate the need to arrange for the livestock's continued care and feeding. The livestock commission company remitted about $20,000 to the trustee from that sale. Mr. Wittman's interim status ended when the creditors failed to elect a trustee at the meeting of creditors held pursuant to 11 U.S.C.A. 341(a). *See 11 U.S.C.A. §§ 701 & 702(d).*

Toward the middle of December, without seeking the Court's permission and apparently without informing the trustee of their intent, the debtors arranged for the same company to sell more of their livestock. The company remitted about $16,000 from this sale to the trustee.

At the end of December, the Bank filed a motion for stay relief, seeking permission to foreclose its security interests and mortgag-

es. The debtors objected, but the trustee did not. At a hearing on January 29, 1998, the debtors' objections to the motion were resolved and stay relief was granted with the exceptions noted in the order ultimately filed on February 26. Sometime later, more of the debtors' livestock was sold through the same commission company. Again, the company remitted the proceeds, about $10,000, to the trustee.

The trustee has a total of $46,549.97 in proceeds from these three sales, plus interest that has accrued since he received the money. On March 20, he filed his "Motion for Allowance and Payment of Administrative Expense," seeking the maximum fee on that amount permitted by § 326 of the Bankruptcy Code, $5,405. He indicates he intends to dispose of the sale proceeds, pursuant to § 725, by giving it to the Bank, and contends the maximum fee is reasonable compensation—as required to be compensable under § 330—for his services. Without expressly saying so, by indicating he intends to distribute the money to the Bank, he concedes that the Bank's security interests in the property that was sold to produce the money were property perfected and are not avoidable. The Bank objects to an award of fees to the trustee in any amount out of its collateral.

In support of his application, the trustee submits that he has performed or will perform the following services for which he is entitled to compensation from the proceeds he has received from the sales of the Bank's collateral: (A) he consented to the first sale of livestock; (B) he reviewed the debtors' financial affairs in relation to the sale of livestock and the tax consequences to the estate of the sales; (C) he reviewed "FSA contracts" in reference to the interest of the estate, if any; (D) he may have to file tax returns on behalf of the estate; (E) he has reviewed and continues to review the tax consequences to the estate of an abandonment or other disposition of other property of the estate including real estate which has a low basis; (F) he appeared at hearings before the Court "in reference to the creditor's motion for disposition of property from the sale of the livestock and other property interests," apparently referring to the Bank's

"Motion for Relief from Stay and for Disposition of Property of the Estate"; and (G) he will perform miscellaneous trustee duties, including accounting to the Court, creditors, and the United States Trustee for all funds received during the administration of the case through semiannual reports to the U.S. Trustee and closing reports on the case. He then quotes a portion of the legislative history of § 326 that indicates the base on which the maximum allowable trustee fee is computed can include moneys a trustee turns over to a secured creditor. The trustee has submitted no itemized record of time he expended to collect or protect estate property that is the Bank's collateral.

The Bank contends that the trustee has done virtually nothing to earn a fee from its collateral. It points out that the first livestock sale was arranged before the debtors filed for bankruptcy, and that the trustee merely allowed the sale to proceed. The second and third sales, the Court notes, took place without the trustee's participation or knowledge, although the livestock commission company sent the proceeds to the trustee. The Bank contends that the trustee did little or nothing in connection with the three sales that benefitted either the Bank or the estate. It suggests the trustee is doing nothing more than turning property over to the Bank or abandoning property upon which the Bank has been allowed to foreclose.

### DISCUSSION AND CONCLUSIONS

The trustee's motion requires the application of several provisions of the Bankruptcy Code. Section 326(a) provides:

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in

interest, excluding the debtor, but including holders of secured claims.

The House Report about this provision, some of which the trustee quoted in his motion, explains in pertinent part:

This section is derived in part from section 48c of the Bankruptcy Act. It must be emphasized that this section does not authorize compensation of trustees. This section simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. 330 authorizes and fixes the standard of compensation. Under section 48c of current law, the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

. . . .

It should be noted that the base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. It does not cover cases in which the trustee simply turns over the property to the secured creditor, nor where the trustee abandons the property and the secured creditor is permitted to foreclose. The provision is also subject to the rights of the secured creditor generally under proposed 11 U.S. [sic] 506, especially 506(c).

*H.R. Rep. No. 95–595, at 327 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6283–84.* The Senate Report explains the provision in nearly identical language. *See S. Rep. No. 95–989, at 37–38 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5823–24.* As amended in 1994, § 330 provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

Section 506(c) provides:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses

of preserving, or disposing of, such property the extent of any benefit to the holder of such claim.

With these provisions and legislative history in mind, the Court turns to consideration of the trustee's motion.

While he was interim trustee, the trustee agreed to allow a sale to proceed that had been arranged before the debtors filed for bankruptcy. This undoubtedly benefitted the Bank—otherwise, the Bank would not have taken the time to make the request of the trustee and the Court. Since the first sale had already made him known to the livestock commission company so that it continued to send him the proceeds of sales of the debtors' livestock, the trustee appears to have done little or nothing with respect to the second sale except receive the proceeds. The third sale appears to have occurred after the Bank obtained stay relief with no objection from the trustee. While the stay relief order did not technically terminate the bankruptcy estate's ownership of the property, the Bank had been given permission to realize on the value of its collateral with an obligation to account to the estate only for any excess it might receive over the amount the debtors owed it, a possibility in theory, but one that did not occur. Essentially, the trustee actively approved one sale and passively received the proceeds from three sales. The first sale certainly occurred before the trustee had the opportunity to examine the Bank's security agreements, financing statements, mortgages, and other loan documentation, and the second may have as well. The trustee's failure to object to the Bank's motion for stay relief demonstrates that the third sale occurred after he had satisfied himself that the Bank's interests were properly perfected and not avoidable so that the Bank was entitled to foreclose its security interests in estate property.

The legislative history to § 326, quoted above, notes that the section sets the maximum amount a trustee can be compensated, but that § 330 authorizes compensation and specifies the standard for its allowance. The history further makes clear that the limits in § 326(a) are outer limits, not grants or entitlements to the maximum fees specified, and warns against treating them as if they were the minimum fees allowable. The history states that the moneys that form the base of the fee computation include those turned over to secured creditors where the trustee has liquidated property subject to a lien and will distribute the proceeds, but does not include moneys generated from property that the trustee merely turns over to a secured creditor, or abandons or otherwise permits a secured creditor to foreclose on. Finally, the history indicates the trustee's compensation from encumbered property is also subject to the limitations of § 506(c).

Essentially treating the money he has received as if his own efforts produced it all and asking the Court to treat the limits in § 326(a) as if they were grants or entitlements, the trustee seeks the maximum fee permitted under that provision without having provided the type of explanation and justification required by §§ 330 and 506(c). The motion contains insufficient detail to enable the Court to determine whether the services the trustee says he has provided or will provide satisfy the requirements of § 330. Many of the services he describes seem to have nothing to do with "preserving, or disposing of" the Bank's collateral, as required by § 506(c) to charge those services against the proceeds of the collateral. Review of the bankruptcy estate's tax situation and eventual filing of a tax return, review of the "FSA contracts," and accounting for all money received during the case have no apparent connection to preserving or disposing of the Bank's collateral. The trustee facilitated an early sale of collateral, which obviously benefitted the Bank; what work he had to do to facilitate that sale is less obvious. He received the proceeds from the second sale, but that sale was apparently not authorized by either the Bank or the trustee, and thus appears to have required the trustee to do little more than receive and deposit a check from the commission company, review what was sold, and possibly correspond with the Bank and the debtors by telephone or letter. The commission company sent the proceeds of the third sale to the trustee after the Bank had received, without objection from the trustee, stay relief to realize on its collateral. The trustee should not have had

to do anything more with this money than ascertain its source and then send it on to the Bank. In sum, the trustee's motion and argument have fallen well short of justifying his request to be paid $5,405 from the proceeds of the Bank's collateral.

Based on the lack of substantiation for the fee requested, the trustee's "Motion for Allowance and Payment of Administrative Expense" must be and it is hereby denied without prejudice.

IT IS SO ORDERED.